### ODOM v. PERRY et al.
### No. 2508.

Court of Civil Appeals of Texas. El Paso. March 12, 1931.

W. B. Silliman, of Fort Stockton, for appellant.

R. D. Blaydes, of Fort Stockton, for appellees.

WALTHALL, J.

Juanita B. Perry, joined pro forma by her husband F. A. Perry, brought this suit against A. J. McKean, Frank Baker, and Worth Odom to recover for rentals on lands. The suit is based upon the following contract:

"State of Texas, County of Pecos

"This contract made and entered into this 14th day of April A. D. 1927 by and between McKean and Baker (a firm composed of A. J. McKean and Frank Baker) herein called First Parties, and Worth Odom, herein called Second Party and Frank Perry, herein called Third Party, Witnesseth:

"That whereas, First Parties have recently purchased from Third Party 12,800 acres of land out of Third Party's ranch in Eastern part of Pecos County, Texas, but title has not yet been perfected and passed from Third Party to First Party, and whereas, First Parties are desirous of leasing to Second Party said lands for a certain term and for a certain consideration and on certain conditions, all of which has been agreed upon between First Parties and Second Party, and,

"Whereas, part of the consideration moving from Second Party to First Parties for said lease, will be the making of certain improvements on said lands, and whereas, it is desired and has been agreed to by all the parties hereto, that the said Second Party shall make said improvements pending the delivery of title and possession from Third Party to First Parties and that Second Party shall be fully protected in the making and erecting of such improvements on said lands, now,

"Therefore, it is agreed between all the parties hereto, that the said Second Party herein shall begin at once the erection of a ranch house of three rooms and porch; also a concrete tank with concrete bottom, 35 feet in diameter, with walls 6 ft. high, and such concrete troughs as second party may deem necessary and advisable; and also about four miles of wolf proof fence; and any other improvements on said ranch as may be deemed necessary by second party up to and so that the total amount of all said improvements so erected by second party shall not exceed the sum of $3200.00 total cost; said improvements to be located and made on sites selected by and satisfactory to second party herein, and to be begun at once and prosecuted with reasonable diligence till completed.

"It is agreed between First Parties and second party that if and when the title to said lands, so purchased by First Parties from Third Party, is delivered to and accepted by First Parties, they, First Parties, will make and enter into a lease contract with second party, containing all the unusual conditions and stipulations contained in a grazing lease contract, to run for a term of five years, and providing for a consideration of 50¢ per acre per annum for and covering all the lands so purchased by First Parties from third party, and providing that said rentals shall be paid each six months in advance. The terms of said lease shall begin when the improvements that are to be erected by second party hereunder have been completed. The erection of the $3200.00 worth of improvements by second party, as herein provided for, shall be applied as the payment of rentals on said lease for the first six months in advance.

"Third party, as the present holder of the title to said lands so sold by him to First Parties, joins in this contract for the express purpose of protecting second party in the costs of the erection of said improvements and third party here and now agrees that if, for any reason, his contract of sale of said lands to First Parties herein, should not finally be consummated by delivery of title and possession to said first parties, then third party will either carry out the contract of first parties herein with second party, by leasing said lands to second party for the same terms and conditions and on the same consideration as herein has been agreed to by first parties, or will pay to second party the actual cost of the erection of such improvements not to exceed $3200.00 and that second party shall have a lien against said improvements and said lands to secure the payment to him of the costs of such improvements.

"The lands mentioned in and covered by this contract are the lands sold by third party to First Parties herein.

"It is agreed that from and after the time said improvements are completed by second party; in case title has not been perfected and said lands delivered by third party to first parties, but the deal between third party and first parties is then still pending First Party shall be liable to third party for the rents on said lands at the rate of 50¢ per acre per annum from the date said improvements are so completed until the title and possession of said lands is finally delivered by Third Party to First Parties, provided said title is finally delivered to first parties; in the event said title to said lands is never delivered by third party to first parties, then second party shall be liable to third party for the use of said lands from and after the time said improve-

ments are so completed at the rate of 50¢ per acre per annum, and in case third party should elect to repay second party for said improvements instead of making the lease contract as above mentioned, said rentals so owing by second party to third party shall be applied as a credit paid by third party on the $3200.00 that he is to pay to second party for said improvements.

"We the parties hereto, each for himself, binds himself, his heirs, executors and administrators to carry out the intent and spirit of this contract.

"Executed in duplicate the day and date first above written.

"[Signed]    A. J. McKean
            "Frank Baker
            "Worth Odom
            "Frank A. Perry

"The First National Bank of Del Rio, Texas, as one of the Lien Holders against said lands, hereby agrees to the terms of the above contract.

"Date 4/22, 1927.
    "The First Nat'l Bank of Del Rio, Texas.
        "By R. Hunnicutt,
            Vice-President."

On the 15th day of April, 1929, F. A. Perry assigned to Juanita B. Perry all of his interest in the contract and in said assignment authorized her to collect all unpaid rentals prior to such assignment and to retain same as her separate estate.

The trial was had on plaintiff's first amended original petition, filed on December 10, 1929, by which amendment defendant Worth Odom was made a party to the suit; McKean and Baker's first amended original answer; and the original and supplemental answer of Worth Odom.

Plaintiff alleged that under the terms of said contract defendants jointly and severally agreed to a grazing lease rental on the 12,800 acres of land described in the lease at the rate of 50 cents per acre until title to said lands were perfected and title passed to defendants. That under the provisions of said written contract as mutually modified only as to time of entry, defendants, their servants and assigns, went into possession of said lands for grazing purposes on June 20, 1927, and remained in possession until the passing of title to defendants, on July 11, 1928, and made payments of the rentals for said period of time except for the time intervening between said June 20, 1927, and August 24, 1927, for which time defendants have refused to pay rentals; said unpaid rentals for said intervening time amount to $960; that said sum was due under said modified written contract to said Perry and his assigns, on said 24th day of August, 1927, about which date plaintiffs understood and allege said improvements (referred to in the lease) were completed; plaintiffs attach a copy of the lease contract to the petition and make it a part thereof; that said possession and use of said premises as alleged occurred on June 20, 1927, at which time, and before said improvements were completed, Worth Odom, acting for himself and the other defendants, requested permission to take possession of said lands to graze his sheep thereon, which request was granted.

Plaintiffs state the legal effect of said contract, demand and refusal to pay, and pray for judgment.

Worth Odom answered by general demurrer, special exception and plea of the statutes of limitation of two years, and general denial.

Judgment having been rendered that plaintiffs take nothing as to McKean and Baker, we need not state their answer.

Worth Odom, by supplemental answer, adopted certain pleadings of defendants McKean and Baker, but we think we need not state such adopted pleading, but will refer to such if necessary. The case, on all questions of fact and law, was submitted to the court. The court overruled all of defendant's exceptions and pleas and rendered judgment in favor of plaintiffs and against Worth Odom in the sum of $341.33, being the rentals and interest thereon from June 20 to August 24, 1927, and with interest thereon from August 24, 1927, from which judgment Odom prosecutes this appeal.

### Opinion.

The trial court made and filed no findings of fact.

Appellant filed assignments of error, and thereunder presents several propositions, and discusses them under one statement and argument. The points submitted, briefly stated, are that the record does not show any obligation of Worth Odom to lease lands from plaintiffs, or to pay rents to either of them; that if the petition and evidence does show such obligation to pay rent from June 20 to August 24, 1927, such obligation is barred by the statute of limitation of two years; that the only obligation of Odom to pay rent to Perry was on the contingency that the sale of the land by Perry to McKean and Baker should not be consummated, and then only after the improvements were completed, and such sale having been consummated, no obligation on the part of Odom to pay rent to Perry is shown; if any obligation of Odom to pay rent to Perry is shown, such obligation did not arise under the written contract pleaded, and such claim for rent would be on a quantum meruit, and would be barred by the statute of limitation; that if any rent was payable, it was payable to the First National Bank of Del Rio, and a settlement of all rents claimed having been made with said bank for Perry, Perry has no claim for rents; that plaintiff's suit is not based on a parol contract or quantum meruit but on an alleged

modification of the written lease contract, and plaintiffs cannot recover on the parol agreement by implication to pay rent.

■ It seems clear that plaintiffs would have no claim against Odom for rent under the terms of the written contract except upon the contingencies provided in the contract. The written contract, as we view it, is not, as between McKean and Baker and Frank Perry, a present contract to pay rentals on the land. After reciting that McKean and Baker had purchased the lands from Perry, but title had not passed, all parties had agreed that Odom should make certain improvements on the lands pending the delivery of title and possession by Perry to McKean and Baker, and for Odom's protection, the contract as between them provides: That if and when the title to said lands as purchased by McKean and Baker from Perry is delivered to and accepted by McKean and Baker, McKean and Baker will then make and enter into a lease contract with Perry containing all the usual conditions and stipulations contained in a grazing lease contract, stating the term of years, the rentals per acre, and when paid and the lands to be leased.

The contract states the express purpose of entering into it to be to protect Worth Odom in the costs to him in the erection of the improvements provided for in the contract. To protect Odom the contract provides, in substance, that in the event the contract between McKean and Baker and Perry should not be consummated, then Perry would either lease the lands to Odom on the same terms as provided in the contract with McKean and Baker, or pay Odom for his improvements. Another contingency is provided in the written contract, to the effect that when Odom has completed the improvements and Perry has not perfected his title and delivered the lands to McKean and Baker, and the deal for the lease is still pending, McKean and Baker shall then and thereafter be liable to Perry for rentals as stated in the contract, until the title and delivery of possession of the lands is effected. The written contract then provides that should title to the lands never be delivered by Perry to McKean and Baker, in that event Odom would become liable to Perry for rentals from and after the time the improvements are completed.

The record shows that none of the contingencies provided for in the written contract ever happened. The title to the lands was perfected and possession of the lands delivered to McKean and Baker.

Plaintiff's petition recites: "That under the provisions of said written contract as mutually modified only as to time of entry the defendants and their servants and assigns went into possession of all said lands for grazing purposes on the 20th day of June, 1927, and remained in possession thereof until the passing of title papers to said property to defend-ants which occurred on or about June 11th, 1928, and made payment of said grazing,lease rentals for said period of time except for the time intervening between June 20th, 1927, and August 24th, 1927, the time sued for, stating the amount, and which sum was due under said modified written contract to said Perry and his assigns, on said 24th day of August, 1927, about which date plaintiffs understood and allege said improvements were completed."

The evidence sufficiently shows that on the 20th day of June, 1927, Odom was in possession of the lands for the purpose of erecting said improvements, and thereafter remained in possession. On the issue of a mutual modification of the written contract the evidence shows the following:

Frank Perry testified: "As to what was said to me by the defendant, Odom, with reference to the taking of possession, he just said, 'all right'. That's what he said. He did ask me to get possession of that property. Prior to the time that he actually took possession he said he had two bunches of sheep coming in and he would have to have the ranch before the improvements could be complete, and I told him that didn't make me feel bad, and when we got the south pasture fenced on the 20th of June I told him it was his, and I didn't have it after that. He was in charge of the work of improvements. Yes, they had then begun. He said he wanted possession at the time he asked it because he had sheep coming in and he had to take care of them. (After stating some conversation as to the sheep and the short range, not material, the witness said—) And I told him I was turning the place over to him, and I wouldn't have anything to do with it, and I have not been on the place since, only to visit him. He has said something to me with reference to whether he talked to either Baker or McKean about it. * * * As to what Odom said to me that Baker and McKean had told him prior to the actual possession, he said nothing."

Witness said that some time after the sale was made, "he (Odom) then told me that Frank Baker had told him to go ahead and take possession of the place, and he would take care of the payments for his services and overseeing the improvements on the place. * * * Nothing was said about that written contract at that time. Nothing was said as to how much he was going to pay me. Nothing was said about how many sheep he would put on it. I don't know that there was anything said about how much acreage he was going to put them on, but we both had the same place in mind—he surely wasn't going to put them over on mine. He actually took possession of the east part of the ranch—that's the part which is in this contract. * * * About the last of May or the first of June Worth Odom came to me and asked me if it was all right for him to go ahead and put his sheep

in there, and I stated that I told him it was, that I wouldn't complain about it, or something like that. I didn't make any new contract with Odom at all, just told him he could turn his sheep in there. That's what happened between me and Mr. Odom at that time and that's all that happened."

Without quoting the evidence, it is sufficient to show that Worth Odom had talked with Baker about putting the sheep in the pasture, and that Baker had told Odom to go ahead, that it was all right, and that he (Baker) "would pay that additional rental, as and for the services Odom was rendering to him (Baker) in overseeing the making of improvements which the contract called for."

■■ There is no question but that a written contract may be modified and changed as to its provisions, and that the old contract may even be abrogated and substituted by a new contract. The only question presented here is as to whether the evidence shows that the written contract was so changed or modified as to make Odom liable to Perry for the rentals for the time from June 20 to August 24, 1927. If he is liable, it must arise by reason of the change or modification of the written contract. He was not liable by reason of the happening of any contingency under the written contract.

The evidence does not show that he expressly or by implication agreed to pay the rental, but rather that McKean and Baker would pay the rental for service rendered them. If, as pleaded by plaintiffs, the effect of the modification was only to advance the time of entry into possession, Odom not being liable under the written contract, there is nothing under the evidence to make him liable under the written contract by entering into possession earlier than was contemplated under the written contract.

If it could be held that the evidence shows by implication that a rental was to be paid, beginning with the possession on the 20th of June, it would seem that the liability for the rental, if any, would be owed by the ones who would be liable under the written contract, as under plaintiff's theory the modification just advanced the time of entry with no other effect.

As we view it, no liability for rental is shown as to Odom either under the written contract or under the contract as modified.

For the reason stated, the case is reversed and judgment here rendered for Odom.